IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| GEORGE BATES, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 6:20-CV-03252-WJE-SSA |
| ) | |
| KILOLO KAJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff George Bates, Jr. seeks judicial review[1] of a final administrative decision of the Commissioner of Social Security denying his claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. For the reasons that follow, the Court reverses and remands the decision of the Commissioner for further consideration and development of the record.

### I. Background

Mr. Bates filed a claim for Disability Insurance Benefits and Supplemental Security Income on April 10, 2018. (AR 194, 200). Mr. Bates alleged a disability onset date of July 15, 2012, due to bipolar disorder, post-traumatic stress disorder, depression, and anxiety. (AR 93). The Commissioner initially denied Mr. Bates' claim on July 13, 2018. (AR 119-28). Mr. Bates requested a hearing before an administrative law judge ("ALJ") on August 20, 2018. (AR 132-33). On June 19, 2019, Mr. Bates amended his alleged onset date to April 23, 2018, and withdrew the

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

Disability Insurance Benefits Claim. (AR 214). Mr. Bates' hearing was held on July 30, 2019. (AR 48). At the hearing, Mr. Bates amended his alleged onset date to April 10, 2018. (AR 50).

On September 17, 2019, the ALJ denied Mr. Bates' claim in a written decision. (AR 11-20). The ALJ determined that although Mr. Bates had severe mental impairments, those impairments did not meet or medically equal the severity of one of the listed impairments in the Code of Federal Regulations. (AR 14). The ALJ then found that Mr. Bates had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to the following limitations:

> The claimant should never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous work environments. The claimant is limited to remembering and carrying out simple, routine tasks and making simple work-related decisions. The claimant would not perform production-paced tasks with strict hourly goals. The claimant would have occasional contact with coworkers, supervisors, and the general public. The claimant would be off task five percent of the workday.

(AR 15).

Mr. Bates filed a request for review by the Appeals Council on October 11, 2019. (AR 191-93). The Appeals Council denied the request on June 24, 2020. (AR 1-5). Because the Appeals Council denied review, the ALJ's decision stands as the final decision of the Commissioner. As Mr. Bates has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Disability Determination and the Burden of Proof

The burden of establishing a disability as defined by the Social Security Act in 42 U.S.C. § 1382c rests on the claimant. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The Social Security Administration has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and eligible for benefits. 20 C.F.R § 416.920.

The Commissioner must evaluate:

(1) whether the claimant is presently engaged in a substantial gainful activity;
(2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;
(3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;
(4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and
(5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).

## III. Standard of Review

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. The reviewing court considers all of the evidence on the record but does not "re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).

The reviewing court must find deficiencies that significantly undermine the ALJ's determination in order to reverse and remand. If a determination is supported by substantial evidence, the reviewing court "does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). Significant inaccuracies or incomplete analyses in the ALJ's opinion may, however, serve as a basis for reversal. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.").

## IV. Discussion

Mr. Bates challenges the ALJ's finding that he would only be off-task 5% of the workday. (Doc. 12 at 9). He specifically claims that the ALJ "failed to provide a narrative statement explaining how she reached the RFC conclusion that Bates would be off-task only 5% of the workday," improperly characterized his condition as "stable" since he was released from prison, erroneously "relied heavily on Bates' functioning and activity level while in prison to support the mental RFC findings," failed to consider Mr. Bates' limitations in performing his daily activities, improperly cited to a lack of psychiatric hospitalization as evidence against a finding of disability, and improperly discounted medical opinions in crafting the RFC. *Id.* at 8-14. The Court finds that remand is warranted on the bases that the ALJ's determination relied on erroneous factual findings about Mr. Bates' functioning and activity level while in prison and failed to consider Mr. Bates' limitations in performing his daily activities.

> A. *The ALJ supported the mental RFC findings with inaccurate and misconstrued information.*

Mr. Bates claims that the RFC analysis erroneously relied on Mr. Bates' functioning and activity level while in prison because the ability to function in "such a structured environment… does not reflect the ability to function in a competitive work setting." (Doc. 12 at 11-12). The Court cannot, however, reach the question of whether the RFC analysis improperly relied on Mr. Bates' functional abilities in a highly structured setting because there is a deeper and more significant flaw in the analysis: a significant number of facts cited by the ALJ are inaccurate or misconstrued.

The portion of the RFC determination discussing Mr. Bates' allegations, his testimony, and his mother's report is as follows:

> The claimant alleged that he has been unable to work due to significant mental symptoms, depression, and anxiety. The claimant explained that he suffers from nightmares, low motivation, crying spells, and mood swings. The claimant has difficulty concentrating and being around others due to panic attacks and intrusive thoughts. The claimant was incarcerated and released just prior to his amended alleged onset date.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The claimant's testimony was not entirely consistent with his allegations of significant mental symptoms. For instance, the claimant admitted that he completed a computer class while he was incarcerated with good marks. The claimant alleged significant difficulty with social interaction, but he admitted that he has been able to hold a job for several months in spite of these difficulties. The claimant admitted that he had no significant difficulties with getting along with the other inmates in prison and that he even had a cooperative relationship with at least on [sic] inmate.
>
> The claimant's mother reported that the claimant is capable of engaging in a number of activities that are not consistent with his allegations of significant limitations. For instance, the claimant's mother reported that the claimant talked on the phone in a typical day and accompanied her to the grocery store (Exhibit B4E). The claimant was capable of performing basic chores around the house, such as food preparation, cleaning, and laundry. The claimant enjoyed making crafts while he was incarcerated. The fact that the claimant was able to engage in these activities is generally consistent with largely unremarkable examination findings, discussed next.

(AR 16-17).

Mr. Bates did not admit he completed a computer class with good marks. He testified that he completed a "Microsoft class to teach you how to use the programs" but did not testify that he received a high score. (AR 53). The ALJ appears to have conflated Mr. Bates' testimony about the Microsoft class with his testimony about a job-hunting class, and misconstrued Mr. Bates' testimony concerning his performance in the job-hunting class. Mr. Bates testified that he took a "class that you can take for job hunting," in which participants scored "platinum, gold, or silver."

*Id*.  Mr. Bates scored a silver. (AR 54).  Mr. Bates' testimony, in sum, was that he completed a Microsoft class and received the lowest possible score in his job-hunting class, not that he passed a computer class with good marks.

The other two items of evidence in the paragraph are also inaccurate or misconstrued.  Mr. Bates did testify that he held a full-time job for approximately three months, but the term of employment was in 2012, six years before his alleged disability onset date of April 10, 2018. (AR 62-63).  Mr. Bates did not "admit[] that he had no significant difficulties with getting along with the other inmates in prison and that he even had a cooperative relationship with at least on [sic] inmate." (AR 16).  He testified as follows:

> Q       Okay. Now when you were in the DOC you had a cellmate or more than one? How many cellmates?
> A       The majority of the time I was in a big warehouse with, there was two sides up there with 100 people on each side. So your beds are just all in a row like a big warehouse.  So you're in there with a tremendous amount of people.
> Q       All right. And did you, on this last stay where you got out in March of last year, did you spend any time in the hole or administrative segregation, the ad-sec?
> A       No. I received write-ups but nothing too [sic] put me in the hole.
> Q       Okay.
> A       The hole is very –
> Q       You were quiet?
> A       Huh?
> Q       Go ahead.
> A       The hole is very crowded in there, so unless you're fighting or get caught with drugs or something like that, refuse to work, something like that, you won't go to the hole.
> ALJ:    Okay, all right.  Any followup, Mr., oh goodness, I just blanked.
> ATTY:   Coring.
> ALJ:    Mr. Coring, before I go [sic] the vocational expert?
> RE-EXAMINATION OF CLAIMANT BY ATTORNEY:
> Q       George, when you were around all those people in prison, did that aggravate your anxiety?
> A       Oh, yeah.  I was very, people didn't want to be around me and I didn't want to be around them.  So I was just, just a grumpy person.
> Q       Okay.  Do you think it affected you in terms of your concentration and your behavior and your demeanor, and your ability to get along with people?
> A       Yeah, but I also learned how to shut myself off.

> Q How did you do that?
> A I just, just not pay attention to what's going on. You had to wear headphones on your TV so you could put your headphones on.
> Q So that would drown out the noise at least?
> A Yeah, and then just watch your TV and be in a different world. I called my TV my window to the world.
> Q So you isolated yourself even though people were physically around you?
> A Yeah.

(AR 78-79). That is the entirety of Mr. Bates' testimony concerning his ability to get along with other inmates in prison. He did not testify that he had a cooperative relationship with another inmate, nor did he write anything to that effect in the Function Report he completed. (AR 237-247). Nowhere in Mr. Bates' testimony or the administrative record did he admit that he had no significant difficulty getting along with other inmates. There is, in fact, ample evidence in the record that Mr. Bates did not get along with other inmates, a physical altercation in the county jail that landed him in the emergency room, his report at a prison medical appointment of "problems with his cell mate," and his desire to quit one of his groups "because of some of the lame answers from the other members." (AR 78-79, 704, 485, 355).

The errors in the ALJ's RFC analysis are significant. The ALJ's discredited Mr. Bates' statements about his symptoms, in part, because of testimony that does not exist. Significantly, the ALJ did not cite any testimony by Mr. Bates that is not inaccurate or misconstrued. For those reasons, and the reasons that follow, the ALJ's RFC determination is not supported by substantial evidence on the record as a whole.

> *B. The ALJ failed to consider Mr. Bates' limitations in performing his daily activities when she determined his RFC.*

Mr. Bates claims that the ALJ failed to consider Mr. Bates' limitations in performing the daily activities reported by his mother in crafting the RFC. (AR 12). The Court agrees.

A claimant's "ability to carry out daily activities must be assessed in light of the record-supported limitations on [their] ability to perform real-world work." *Reed v. Barnhart*, 399 F.3d 917, 924 (8th Cir. 2005). The Eighth Circuit "has repeatedly observed that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" *Id.* at 923 (quoting *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998)). Therefore, when crafting an RFC, the ALJ must consider not only the nature of the claimant's daily activities, but also "the quality of the [claimant's] daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the *frequency, appropriateness, and independence* of the activities." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007)) (emphasis in original).

The ALJ's discussion of the report prepared by Mr. Bates' mother, Carolyn Nichols, failed to consider his "ability to sustain" his reported activities "over a period of time" and "the frequency, appropriateness, and independence of the activities." *Wagner*, 499 F.3d at 851. The ALJ noted that Mr. Bates "accompanied [Ms. Nichols] to the grocery store" but did not note Ms. Nichols' statement that Mr. Bates "does not shop too often but it takes a long time because he is indecisive." (AR 16, 252). The ALJ stated that Mr. Bates engaged in food preparation, but Ms. Nichols wrote that he prepares "simple meals," "generally reheat[ing] whatever I have already cooked." (AR 16, 251). The ALJ stated that Mr. Bates is capable of cleaning and laundry but did not discuss the qualifications Ms. Nichols placed on those activities. (AR 16). Ms. Nichols wrote that Mr. Bates' household chores were "cleaning, laundry, sometimes," there was "no consistency" to his performance of chores, and he needed encouragement because "he has to be feeling mentally good to get motivated." (AR 251). The ALJ wrote that "[t]he claimant enjoyed making crafts in

prison," which is accurate, but Mr. Bates was discharged from prison in March 2018, and both Mr. Bates and his mother wrote in May 2018 that he no longer engaged in crafts. (AR 241, 253). Mr. Bates may be physically capable of performing the activities of daily living, but the ALJ did not properly consider the alleged limitations imposed by his mental illness.

If the ALJ had considered the quality, frequency, and independence of the activities Ms. Nichols reported, there would be no inconsistency between Mr. Bates' alleged symptoms and Ms. Nichols' report. This is not an instance in which the record supports contradictory but reasonable conclusions. *See Travis*, 477 F.3d at 1040 ("If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome."). A reasonable person would not conclude that Ms. Nichols' report was inconsistent with Mr. Bates' "allegations of significant limitations," in light of the qualifications Ms. Nichols made to Mr. Bates' functional abilities. (AR 16). *See McKinney*, 228 F.3d at 863 ("Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."). *Id*.

### C. The ALJ's errors warrant a remand.

The inaccuracies and omissions in the instant case cannot be categorized as a harmless deficiency in opinion-writing. *See Draper*, 425 F.3d at 1130 ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand."). The ALJ found Mr. Bates' testimony inconsistent with his alleged symptoms on the basis of statements that did not exist. Additionally, she found Ms. Nichols' report inconsistent with Mr. Bates' alleged symptoms only because she credited the

activities Ms. Nichols reported but discounted the significant qualifications Ms. Nichols placed on those activities. Those errors call the entirety of the RFC determination into question.

The ALJ's errors also significantly undermine her determination that Mr. Bates' impairments did not meet or medically equal the severity of a listed impairment at the third step of the sequential evaluation process. The ALJ cited the inaccurate finding that Mr. Bates "was capable of completing a computer course in which he received high marks while he was incarcerated" to support her conclusions in three of the four areas of mental functioning that she evaluated. (AR 14-15). In fact, this was the only evidence she cited to support her finding that Mr. Bates had no significant limitations in understanding, remembering, or applying information. (AR 14). Additionally, the ALJ cited Mr. Bates' ostensible admission that "he had a cooperative relationship with another inmate" and failure to indicate "any significant difficulty getting along with anyone while he was incarcerated" as evidence that he had "no more than a moderate limitation in interacting with others." (AR 14). Mr. Bates did not admit to a cooperative relationship with another inmate and testified that he isolated himself in prison because "people didn't want to be around me and I didn't want to be around them." (AR 79). Absent the inaccurate findings, the only items of evidence the ALJ cited to support her conclusions about Mr. Bates' mental limitations were his mother's report that he talked on the phone in a typical day, the fact that he did crafts in prison, and his ability to perform household chores with supports. (AR 14-15).

Remand is necessary to allow the ALJ to reweigh the evidence, with Mr. Bates' testimony and the administrative record accurately construed. *See Vester*, 416 F.3d at 889 (asserting that the reviewing court does not "re-weigh the evidence").

### III. Conclusion

For the reasons set forth herein, the Court finds the Commissioner's determination that Mr. Bates was not disabled is not supported by substantial evidence on the record as a whole and is therefore reversed and remanded for further consideration and development of the record.[2] Judgment shall be entered in accordance with this Order.

Accordingly,

IT IS, THEREFORE, ORDERED that the decision of the Commissioner is reversed and remanded for further consideration and development of the record, as set forth herein.

Dated this 2nd day of August, 2021, at Jefferson City, Missouri.

Willie J. Epps, Jr.
United States Magistrate Judge

---

[2] If the Commissioner's decision is reversed, the case should ordinarily be remanded for further proceedings "out of our abundant deference to the ALJ." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (citation and quotation marks omitted). An immediate finding of disability is warranted only "if the record overwhelmingly supports such a finding." *Id.* (citation and quotation marks omitted).